Case 4:16-cv-01166   Document 19   Filed on 09/20/17 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
September 20, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIE DAVIS, | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-CV-01166 |
| | § | |
| LORIE DAVIS, | § | |
| Director of the Texas Department of | § | |
| Criminal Justice - Correctional | § | |
| Institutions Division, | § | |
| *Respondent*. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner, Willie Davis, a Texas state inmate filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his capital murder conviction. Dkt. 1 at 2. The matter was referred to this magistrate Judge by District Judge Lynn N. Hughes. Dkt. 3. Respondent, Lorie Davis, filed a motion for summary judgment. Dkt. 15. After reviewing the record, the Court recommends that Davis's petition be denied with prejudice.

### Background

Davis's conviction stems from a conspiracy to rob Tommy Andrade, which resulted in Andrade's death. Dkt. 4 at 9. Two or three months prior to his death, Andrade robbed Davis's son, Chad, of $100,000. *Id.* Around this time, Chad contacted his drug supplier, Thomas Parent, to tell him what had happened. Parent arranged for Boris Mogilevich and Bradley Padrick, both from Atlanta, Georgia, to fly to Texas and get the money back from Andrade. Chad and his brother Trey took Mogilevich and Padrick to a

tour bus parked in front of Davis's house, where they stayed for approximately one week leading up to the incident. To "avoid trouble," Jesse Mancuso was added to the team to help out with the plan.

The three men – Mancuso, Mogilevich, and Padrick – drove to Andrade's trailer. Chad and Trey waited at a convenience store half a mile away from the trailer. When the three entered Andrade's trailer, shots were fired. *Id.* at 8. Andrade and Mancuso were killed, while Mogilevich and Padrick received non-fatal gun wounds and left the scene. *Id.* Davis picked up Mogilevich and Padrick in his tour bus and drove them to Atlanta, a 16 hour trip. He brought the wounded men to a parking lot where they were met by Parent and his mother, Sandra Albably, a registered nurse. *Id.* at 9. Petitioner was arrested and charged for the capital murder of Andrade.

Davis pleaded not guilty and is currently serving a life sentence pursuant to the judgement of the 85th Judicial District Court of Brazos County, Texas, delivered on March 06, 2007. Dkt. 1 at 2. Davis's conviction was affirmed on appeal. *Id.* at 3. Davis appealed to the Texas Court of Criminal Appeals (TCCA), where his conviction was affirmed and made final upon failure to file a timely writ of certiorari to the United States Supreme Court. *Id.* at 4.

Davis's petition for habeas corpus claims that he (1) is actually innocent of the charged offense, (2) was denied due process by the improper admission of evidence, (3) was denied due process by the government's use of false testimony, and (4) was denied due process when the prosecution failed to produce exculpatory evidence. *Id.* at 6-11.

## Analysis

Davis's petition is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254 sets forth a "highly deferential standard for evaluating state court rulings, which demands the state court decision be given the benefit of the doubt." *Woodford v. Visclotti*, 537 U.S. 19, 24 (2002). A petitioner cannot obtain federal relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in:

(1) A decision contrary to, or in light of an unreasonable application of clearly established law, as determined by the Supreme Court; or

(2) A decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

### I. Actual Innocence

Davis claims that he is actually innocent under *Herrera v. Collins*, 560 U.S. 390 (1993) and *Schlup v. Delo*, 513 U.S. 298 (1995). In support of this contention, Davis provides the affidavits of several of the convicted co-conspirators.

Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation in the underlying state criminal proceeding. *Herrera*, 560 U.S. at 400; *Schlup*, 513 U.S. at 327. A petitioner must support his allegations with new, reliable evidence that was not available at trial and must show that it was more likely than not that in light of the new evidence no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup* at 327.

Davis submits several affidavits and sworn testimony from his co-conspirators as assurance of his innocence roughly five to seven years after his conviction. Davis argues that the affidavits were only recently obtained because each defendants' counsel advised him not to testify at the trial since they were in various stages of their appeals. Dkt. 4 at 15. The state habeas trial court found that the affidavits were not "newly discovered or newly available" because the evidence was "available to Applicant at the time jury selection began in his jury trial on February 19, 2007." Dkt. 14-1 at 650. Specifically, in contrast to what Davis contends, the state court points out that one co-conspirator waived his appeal almost a year before Davis's trial, and was available to testify at Davis's trial. *Id*. The state's review of Davis's application revealed that Davis simply "concluded that the affidavits/sworn testimony declaration constitute newly discovered evidence and did not address the merits." *Id*.

Further, the state habeas trial court gave little credence to the affidavits "due to the fact that all [the affiants were] convicted co-conspirators in the instant criminal transaction with Applicant, that their affidavits/sworn declaration were signed over five years after Applicant was found guilty of the offense, that they are not corroborated by credible evidence and are either self-serving or serve a member of their drug trafficking conspiracy, namely applicant." *Id*. at 651. Because the affidavits proved to be unreliable, the state court concluded that Davis's conviction was not based upon false testimony, and therefore no constitutional error existed. *Id*. at 652-53. Accordingly, the state habeas trial

court found that Davis failed to establish his innocence under *Herrera* or *Schlup*. *Id.* at 674-77. The Court agrees.

Based on the evidence presented, the state habeas court's rejection was not an unreasonable determination. Federal habeas courts do not sit to correct errors of fact, but to ensure that individuals are not imprisoned in violation of the Constitution. *See, e.g., Moore v. Dempsey,* 261 U.S. 86, 87-88, 43 S.Ct. 265, 265-266, 67 L.Ed. 543. Thus, a claim of actual innocence, not accompanied by evidence of constitutional error, is not a cognizable ground for relief on federal habeas corpus review. *Herrera,* 560 U.S. at 400. Davis has not presented compelling *new* nor *reliable* evidence to meet the "extraordinarily high" actual innocence threshold, and has failed to show a constitutional error existed at his trial. For these reasons, Davis is not entitled to habeas corpus relief.

## II.     Improper Admission of Evidence

Davis argues that his due process rights were violated when the presiding state court judge allowed the prosecution to introduce extraneous bad-act evidence and failed to give a contemporaneous limiting instruction when the evidence was introduced. Dkt. 4 at 51.

The admissibility of evidence is a matter governed by state law. Even assuming there was an error, an alleged violation of state law does not merit federal habeas corpus relief. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). "The state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey,* 126 S. Ct. 602, 604 (2005). A federal habeas corpus court will not grant relief from errors in a state

trial court's evidentiary rulings unless those errors resulted in a denial of fundamental fairness under the Fourteenth Amendment. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998). Davis must show that the trial court's errors had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). He must establish that admittance of the evidence rendered the trial, as a whole, fundamentally unfair. *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984).

The state habeas court did not address this issue because Davis raised it on direct appeal. Dkt. 15 at 19. The court of appeals found that the trial court did not err as the evidence was admissible as same-transaction contextual evidence, so that they formed an indivisible criminal transaction.[1] *Id.* The evidence provided context for the charged offense: the motive for the conspiracy, and why Davis would have entered into the conspiracy with his sons. Accordingly, admission of this evidence does not amount to a due process violation.

Davis also contends that the state trial judge's failure to give a contemporaneous limiting instruction unfairly prejudiced him and denied him due process. Dkt. 4 at 51. First, Texas law does not require the court give a contemporaneous limiting instruction for same-transaction contextual evidence. *See Castaldo v. State*, 7 S. W.3d 345, 352 (Tex. Crim. App. 2002). Further, the state trial judge did include a limiting instruction in the jury charge (Dkt. 14-1 at 63-64) and "juries are presumed to follow their instructions." *See Zafiro v. United States*, 506 U.S. 534, 540-41 (1993). Davis makes no showing that

---

[1] During trial the prosecution and witnesses testified to past bad acts such as: calling Davis the finance man for the conspiracy; Davis ran drugs in his bus and boat; Davis was a key part of a major drug dealing operation; Davis possessed thirty cell phones; Davis had many guns; large amounts of money were seized from Davis's home; and previous drug deals in Georgia. Dkt. 4 at 52-55.

the jury was so improperly influenced that it rendered his trial fundamentally unfair and, as such, should not be the basis for habeas relief.

### III. False Testimony

In his third claim, Davis contends that his conviction was secured based on the false testimony of Sandra Albably. Dkt. 4 at 74. According to Davis, Albably refused to cooperate with police for over two years until a plea agreement was made for her son. *Id.* Albably cooperated and testified at trial to a conversation that she had with Davis where he stated, "I knew this was going to happen . . . I was waiting to get this phone call." *Id.* Davis claims the conversation never happened and offered an affidavit from Boris Mogilevich as support. *Id.* at 71-72.

"To establish a due process violated based on the government's use of false or misleading testimony, a petitioner must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997).

Davis has not shown or even alleged that the prosecution knew the testimony was false. Instead, he relies on an affidavit from Mogilevich detailing the falsity of Albably's statement, an affidavit the state court found to be unreliable. Dkt. 13-10 at 65. Even assuming the testimony was false, there is no evidence on the record that the prosecution knowingly used false testimony to secure Davis's conviction. This ground cannot secure habeas relief.

### IV. Failure to Disclose Exculpatory Evidence

Davis's final claim is that the prosecution failed to disclose exculpatory evidence

7

that the shooters face was covered in blood, suggesting the shooter may not have had the intent to kill. Davis also alleges that the prosecution failed to disclose an agreement with one of its witnesses, Jason Bishop. Dkt. 4 at 76. According to Davis, the Texas Rangers promised to help Bishop get his car back if he were to testify against Willie.

In *Brady v. Washington*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). To successfully bring such a claim, Davis must show that (1) the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence was, either willfully or inadvertently, suppressed by the prosecution; and (3) prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999). The suppressed evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Here, Davis was already aware that Mogilevich may have had blood covering his face. Dkt. 14-1 at 14. Davis's counsel agreed that the defense team knew that Mogilevich had a gunshot wound to the head that caused heavy bleeding, prior to trial. *Id.* at 18. Likewise, Davis was made aware of the conversation concerning the alleged agreement between Bishop and the Brazos County Sheriff's Department, prior to trial. Defense counsel was provided the transcribed conversation between Bishop and the sheriff. *Id.* at 21. Accordingly, no habeas relief is warranted on this ground.

## **Recommendation**

For these reasons, Respondent's motion for summary judgement should be granted, and Davis's petition for writ of habeas corpus should be denied. Also, the Court recommends that a certificate of appealability not be issued, because no jurist of reason would find it debatable whether the Court was correct in its ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. See rule 8(b) of the Rules governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72.

Signed at Houston, Texas, on September 20, 2017.

Stephen Wm. Smith
United States Magistrate Judge